IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00986-CNS-STV

DONQUENICK YVONNE JOPPY,

    Plaintiff,

v.

HCA-HEALTHONE LLC, d/b/a The Medical Center of Aurora,

    Defendant.

---

**JURY INSTRUCTIONS**

---

**OPENING INSTRUCTIONS**

Opening Instructions given 8/11/2025

1

**Opening Instructions**

We are about to begin the trial of the case you heard about during the jury selection. Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you. The party who sues is called the plaintiff. In this action, plaintiff is DonQuenick Yvonne Joppy. The party being sued is called the defendant. In this action, defendant is HCA-HealthONE LLC d/b/a The Medical Center of Aurora (which will be referred to as "TMCA," the "Hospital," or "Defendant").

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason. When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

When I say "admitted into evidence" or "received in to evidence," I mean that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else. In addition, you should not permit anyone to discuss the case in your presence. You should avoid reading any news articles that might be

2

published about the case. You should also avoid watching or listening to any television or radio comments or comments on the Internet about the trial.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers. It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible. You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections. If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure. Sometimes, you may be excused from the courtroom during these discussions. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**Order of Trial**

The case will proceed as follows:

First, the lawyers for each side may make opening statements. What is said in the opening statements is not evidence, but is simply an outline or summary to help you understand what each party expects the evidence to show. A party is not required to make an opening statement.

After the opening statements, Plaintiff Joppy will present evidence in support of her claims and the Defendant's lawyers may cross-examine the witnesses. At the conclusion of Plaintiff Joppy's case, Defendant may introduce evidence and Plaintiff Joppy's lawyer may cross-examine the witnesses. Defendant is not required to introduce any evidence or to call any witnesses. If Defendant introduces evidence, Plaintiff Joppy may then present rebuttal evidence.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown. What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

**Evidence in the Case**

The evidence in the case will consist of the following:

1. The sworn testimony of the witnesses, no matter who called a witness.

2. All exhibits received in evidence, regardless of who may have produced the exhibits.

3. All facts that may have been judicially noticed and that you must take as true for purposes of this case.

Depositions may also be received in evidence. Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions. In some cases, a deposition may be played for you on videotape. Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Statements and arguments of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact. A "stipulation" is an agreement between both sides that certain facts are true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

I may take judicial notice of certain facts or events. When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

Some evidence is admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited to the statements of the witness. In other words, you are not limited solely to what you see and hear as the witnesses testified. You may draw from the facts that you find have been proved, such reasonable inferences or conclusions as you feel are justified in light of your experience.

At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time

consuming for the reporter to read back lengthy testimony. I urge you to pay close attention to the testimony as it is given.

Case No. 1:22-cv-00986-CNS-STV    Document 366    filed 08/11/25    USDC Colorado
pg 6 of 18

**Credibility of Witnesses**

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's demeanor and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

**Burden of Proof**

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

## Claims and Defenses

I will now give you a brief summary of the facts of this case.

Plaintiff's Statement of the Case:

Plaintiff Donquenick Joppy brings this lawsuit against her former employer, HCA-HealthOne, under a federal law that prohibits race discrimination and retaliation in employment. Defendant HCA-HealthOne LLC is a healthcare corporation that owns and operates The Medical Center of Aurora where Plaintiff Joppy worked as a registered nurse in the Intensive Care Unit ("ICU") from June 2017 until her termination in June 2019. She alleges that a group of white nurses targeted and bullied her and that she complained about it to her supervisor but her complaints were never investigated. Instead, she was placed on a performance improvement plan based on accusations from the same group of nurses she had been complaining about. Hospital leadership, who themselves referred to the group as "mean girls" or a "clique", knew that others had also complained about being bullied. But still, no investigation. On May 24, 2019, when the ICU treating physician ordered end-of-life care for a 94-year-old terminally ill patient, Ms. Joppy followed the physician's order and, with instructions from the respiratory therapist, removed ventilator support. The patient was unconscious and unresponsive with family at his bedside showing no signs of pain or distress. On May 29, 2019, hospital leadership suspended Ms. Joppy pending an investigation into the patient's end of life care. Recognizing this as a pattern of continued discrimination Ms. Joppy submitted a complaint to HCA's corporate headquarters. It was never investigated. Five days later, the hospital terminated Ms. Joppy citing a number of reasons. Ms. Joppy claims that the reasons are false and a cover-up for unlawful discrimination and retaliation. Plaintiff Joppy seeks past and future compensatory and punitive damages.

Defendant's Statement of the Case:

Plaintiff Joppy, an ICU nurse who was placed on a Performance Improvement Plan, was terminated in 2019. She turned off a still-living patient's ventilator in violation of Hospital policy and accepted nursing standards. The patient was pronounced dead 13 minutes later. Plaintiff Joppy was suspended pending an HR investigation that ultimately concluded that: her conduct was contrary to the standard of care for ventilated ICU patients; she acted outside the scope of her nursing license; and she may have caused the patient harm. Further, when confronted with her actions, Plaintiff Joppy failed to appreciate the gravity of her conduct. Now, Plaintiff Joppy is alleging that she was terminated because of her race and because of a complaint she made with the Hospital's HR department after she was suspended. That is not what happened. Plaintiff Joppy was terminated for acting outside the scope of her practice. The Hospital would have terminated any nurse who turned off a ventilator on a still-living patient, regardless of their race.

9

## Stipulations

Before the trial of this case, the court held a conference with the lawyers for all the parties. At this conference, the parties entered into certain stipulations or agreements in which they agreed that facts could be taken as true without further proof.

The stipulated facts are as follows:

1. TMCA hired Ms. Joppy on June 5, 2017, to work as a Registered Nurse in its Intensive Care Unit ("ICU").

2. Ms. Joppy is Black.

3. Ms. Joppy earned her associate degree in nursing in 2013 from J. Sargeant Reynolds Community College in Richmond, Virginia.

4. From 2013 to the present, Ms. Joppy's license to practice as a Registered Nurse has remained active and in good standing.

5. On May 23, 2019, around 11:45 p.m., TMCA admitted Patient Stewart Brown into its emergency room.

6. Mr. Brown was a 93-year-old patient who was unresponsive and in respiratory distress.

7. On May 24, 2019, in the early morning, Dr. Alsaleem, the night-shift ICU doctor, informed the family that Mr. Brown was experiencing a "non-survivable event."

8. Around 8:00 a.m., after discussion with the family, Dr. Joseph Forrester, the day-shift ICU doctor, directed Nurse Karen Welter to start "end-of-life care" for Mr. Brown, which Ms. Welter conveyed to Ms. Joppy.

9. Mr. Brown was pronounced dead at 8:28 a.m. on May 24, 2019.

10. Karen Welter electronically entered the order in Mr. Brown's medical chart regarding end-of-life care after Mr. Brown was pronounced dead.

11. TMCA terminated Ms. Joppy on June 4, 2019.

12. Ms. Joppy's nursing license was never revoked or suspended.

13. Ms. Joppy did not work for another hospital after being terminated by TMCA.

Since the parties have stipulated to these facts and do not dispute them, you are to take these facts as true for purposes of this case.

Case No. 1:22-cv-00986-CNS-STV    Document 366    filed 08/11/25    USDC Colorado
pg 11 of 18

**Judge's Questions to Witnesses**

During the trial, I may sometimes ask a witness questions. Please do not think I have any opinion on the case based on my questions. I may ask a question simply to clarify a matter, not to help one side of the case or to harm another side.

Remember at all times that you, as jurors, are the sole judges of the facts of this case.

**Questions by Jurors Permitted**

Jurors normally do not ask a witness questions. However, I allow jurors to ask important questions during the trial under certain conditions.

If you feel the answer to your question would be helpful in understanding the issues in the case, please raise your hand after the lawyers have completed their examination but before I have excused the witness. You will then write your question for the witness on a jury question form that will be provided to you. Ms. Dynes will then collect the questions.

I will talk privately with the lawyers and decide whether the question is proper under the law. If the question is proper, I will ask the witness the question. Some questions may be rewritten or rejected. Do not be concerned if the question is not asked.

Do not discuss your question with anyone, including the marshal or clerk. Remember, you are not to discuss the case with the other jurors until it is submitted for your decision.

If you have difficulty hearing a witness or lawyer, please raise your hand immediately.

## Notetaking Permitted

During this trial, I will permit you to take notes. You are not required to take notes. If you do not take notes, you should not be influenced by another juror's notes, but should rely upon your own recollection of the evidence.

Because many courts do not permit notetaking by jurors, a word of caution is in order. You must not allow your notetaking to distract you from the proceedings.

Frequently, there is a tendency to attach too much importance to what a person writes down. Some testimony that is considered unimportant at the time presented and not written down may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest asset when it comes time to deciding this case.

**Juror Use of Electronic Technology (Before Trial)**

The Sixth Amendment of our Constitution guarantees a trial by an impartial jury. This means that, as jurors, you must decide this case based solely on the evidence and law presented to you here in this courtroom. Until all the evidence and arguments have been presented and you begin to deliberate, you may not discuss this case with anyone, even your fellow jurors. After you start to deliberate, you may discuss the case, the evidence, and the law as it has been presented, but only with your fellow jurors. You cannot discuss it with anyone else, including family members, until you have returned a verdict and the case has come to an end. I'll now walk through some specific examples of what this means.

First, this means that, during the trial, you must not conduct any independent research about this case, or the matters, legal issues, individuals, or other entities involved in this case. Just as you must not search or review any traditional sources of information about this case (such as dictionaries, reference materials, or television news or entertainment programs), you also must not search the internet or any other electronic resources for information about this case or the witnesses or parties involved in it. The bottom line for the important work you will be doing is that you must base your verdict only on the evidence presented in this courtroom, along with instructions on the law that I will provide.

Second, this means that you must not communicate about the case with anyone, including your family and friends, until deliberations, when you will discuss the case with only other jurors. During deliberations, you must continue not to communicate about the case with anyone else. Most of us use smartphones, tablets, or computers in our daily lives to access the internet, for information, and to participate in social media platforms. To remain impartial jurors, however, you must not communicate with anyone about this case, whether in person, in writing, or through email, text messaging, blogs, or social media websites and apps (like Twitter (now known as X), Facebook, Instagram, LinkedIn, YouTube, WhatsApp, and Snapchat).

Please note that these restrictions are about all kinds of communications about this case, even those that are not directed at any particular person or group. Communications like blog posts or tweets can be shared to an ever-expanding circle of people and can have an unexpected impact on this trial. For example, a post you make to your social media account might be viewable by a witness who is not supposed to know what has happened in this courtroom before the witness has testified. For these reasons, you must inform me immediately if you learn about or share any information about the

case outside of this courtroom, even if by accident, or if you discover that another juror has done so.

Finally, a word about an even newer challenge for trials such as this one—persons, entities, and even foreign governments may seek to manipulate your opinions, or your impartiality during deliberations, using the communications I've already discussed or using fake social media accounts. But these misinformation efforts might also be undertaken through targeted advertising online or in social media. Many of the tools you use to access email, social media, and the internet display third-party notifications, pop-ups, or ads while you are using them.

These communications may be intended to persuade you or your community on an issue, and could influence you in your service as a juror in this case. For example, while accessing your email, social media, or the internet, through no fault of your own, you might see popups containing information about this case or the matters, legal principles, individuals or other entities involved in this case. Please be aware of this possibility, ignore any pop-ups or ads that might be relevant to what we are doing here, and certainly do not click through to learn more if these notifications or ads appear. If this happens, you must let me know.

Because it is so important to the parties' rights that you decide this case based solely on the evidence and my instructions on the law, at the beginning of each day, I may ask you whether you have learned about or shared any information outside of this courtroom.

I hope that for all of you this case is interesting and noteworthy.

**Province of Judge and Jury**

After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts. I must stress that you must accept the rules of law that I give you, whether or not you agree with them.

The law permits me to comment on the evidence in the case during the trial or while instructing the jury. Such comments are only expressions of my opinion as to the facts. You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.

## Jury Conduct

To insure fairness, you must obey the following rules:

1. Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended. If someone should try to talk to you about the case during the trial, please report it to me immediately.

2. During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

3. Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

4. If you need to tell me something, simply give a signed note to the clerk to give to me.

During recesses and adjournments of court, you will be free to separate, to eat lunch, and to go home at the end of the day.

Our Courtroom Deputy, Julie Dynes, is here to take care of your needs during this trial. Do not discuss this case with her. If you have any issues or needs, let Ms. Dynes know and she will discuss it with me.