

*8/18/25 rejected [signature]*

**Instruction No.** ~~14~~ Now 16

Plaintiff Joppy claims that Defendant's termination of her constitutes racial discrimination.

In order for Plaintiff Joppy to establish her claim for race discrimination under Section 1981, she must prove the following by a preponderance of the evidence:

1. Defendant ~~took a materially adverse action against~~terminated Plaintiff Joppy; and

2. Defendant would not have ~~taken that adverse against~~terminated Plaintiff Joppy but for her race.

*accepted*

Regarding the second element, race must be a "but-for" cause of the adverse employment action. Plaintiff Joppy's race does not need to be the sole cause of Defendant's action, but Plaintiff Joppy must show that ~~it played a part~~race was indeed the reason for the termination.

If you find that Plaintiff Joppy has failed to prove either or both of these propositions by a preponderance of the evidence, then you must find against her on her discrimination claim and in favor of Defendant. If, on the other hand, you find that Plaintiff Joppy has proved both propositions by a preponderance of the evidence, then you must find in her favor and against Defendant.

**Defendant's Competing Instruction** — *For 16+ Now 18 (retaliation)*

**Defendant's Argument**: The Court's proposed "but for" causation standard is too similar to the materially adverse standard available under Title VII, and not akin to the "but for" causation standard required under Section 1981 claims, as made clear by the case law post-*Comcast* and *Bostock* as described below. Defendant's proposed instruction materially tracks the FFA Model language, adding (1) reference to the primary adverse action at issue in this case (the termination) and (2) the legal developments articulated in the *Comcast* case ("but for" standard applicable to Section 1981 claims). *First*, the instruction fails to identify the adverse employment action at issue – which is termination. Defendant does not dispute the adverse action is Plaintiff's termination from employment on June 4, 2019, and thus this adverse action is included in Defendant's proposed instruction. *See* CNS Standing Order Re Pretrial & Trial Procedures (Civil Cases) (Dec. 2024) at III(F) ("[c]lear and concise jury instructions are imperative."). *Second*, Defendant's proposed instruction provides an accurate statement of the "but for" standard applicable to Section 1981 claims, as articulated by this very Court. *See Comcast Corp. v. Nat. Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1014, 19 (2020) (for Section 1981 claims, "a plaintiff bears the burden of showing that race was a but-for cause of its injury"; "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."); *see also Garcia v. Summit Tech. Sols., LLC*, No.

16

## Instruction No. ~~14~~ 16

21-CV-03077-CNS-MDB, 2022 WL 4467038, at *4 (D. Colo. Sept. 26, 2022), report and recommendation adopted, No. 121CV03077CNSMDB, 2022 WL 10028881 (D. Colo. Oct. 17, 2022) (in the context of Section 1981 discrimination and retaliation claims, explaining *Comcast* holding: "[i]n other words, a § 1981 plaintiff must show that race was not just one factor, but indeed **the reason** for, her injuries.") (emphasis added.); *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023) (differentiating Section 1981 and Title VII claim standards, explaining: "[u]nlike a Title VII discrimination claim—where a lesser 'motivating factor' standard sometimes applies—a § 1981 claim requires proof that race was a but-for cause of a termination." This does not require [the employee] to prove that race was the exclusive cause of his termination, but **it does require him to prove that but for his race** he would not have been terminated.") (quoting *Comcast*, 140 S. Ct. at 1017 (emphases added)); *Arevalo-Carrasco v. Middleby Corp., Inc.*, 851 F. App'x 628, 630–31 (7th Cir. 2021) (contrasting Title VII and Section 1981 discrimination claims, explaining that "[u]nder § 1981, the race- or ethnicity-based discrimination **must have been the determinative reason** for his firing," citing *Comcast*, 140 S. Ct. at 1019, while on the contrary "under Title VII's 'motivating factor' standard," an employee could prevail "[i]f discrimination were merely one reason" for the adverse action, quoting *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1739, (2020) (emphases added)); *Buhagiar v. Wells Fargo Bank NA*, No. CV-19-05761-PHX-JJT, 2022 WL 2833940, at *7 (D. Ariz. July 20, 2022), aff'd sub nom. *Buhagiar v. Wells Fargo Bank, N.A.*, No. 22-16232, 2024 WL 2931427 (9th Cir. June 11, 2024) (concluding "[a] reasonable fact-finder could not ... **conclude that race was the motivating factor in Defendant's decision-making, as required under 42 U.S.C. § 1981**.") (Citing 42 U.S.C. 2000e-2(m); 42 U.S.C. § 1981. *Compare Comcast*, 140 S. Ct. 1009 *with Bostock*, 140 S. Ct. 1731.) (Emphases added.)).

17

**Instruction No. 13**

Now [handwritten annotations: 8/18/25, signature]

You have heard significant evidence throughout this case about the entirety of Plaintiff's employment. However, the legal questions before you to decide, as a jury, by a preponderance of the evidence, relate solely to those listed in these instructions. Plaintiff is <u>not</u> pursuing a hostile work environment claim. For the avoidance of doubt, Plaintiff is <u>not</u> pursuing separate claims of discrimination or retaliation regarding:

- Placement on the Performance Improvement Plan or PIP;
- Denial of opportunity to interview to transfer to a different department in the Hospital; and/or
- The Hospital's report to the Colorado Department of Public Health and Environment ("CDPHE").

Further, Plaintiff is not pursuing what is known as "economic" damages, or wages and benefits, from the Hospital.

**Instruction No. ~~20~~ 21**

If you find that Defendant unlawfully discriminated or retaliated against Plaintiff Joppy, then you must determine an amount that is fair compensation for her losses. You may award compensatory damages for injuries that Plaintiff Joppy proved were caused by Defendant's wrongful conduct. The damages that you award must be fair compensation, no more and no less.

You may award damages for any emotional distress, pain, suffering, inconvenience or mental anguish that Plaintiff Joppy experienced as a consequence of the wrongful conduct. No evidence of monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for setting the compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

For the avoidance of doubt, you may not award economic damages – that is, compensation for alleged lost wages and benefits in the past and in the future, as Plaintiff Joppy is not seeking such damages. These are not part of compensatory damages and are not damages that Plaintiff Joppy seeks in this case.

23

**Instruction No.** Now 28

Throughout your deliberations, you may discuss with each other the evidence and the law that has been presented in this case, but you must not communicate with anyone else by any means about the case. You also cannot learn from outside sources about the case, the matters in the case, the legal issues in the case, or individuals or other entities involved in the case. This means you may not use any electronic device or media, the internet, any text or instant messaging service, or any social media apps to research or communicate about what you've seen and heard in this courtroom.

These restrictions continue during deliberations because it is essential, under our Constitution, that you decide this case based solely on the evidence and law presented in this courtroom. Information you find on the internet or through social media may be incomplete, misleading, or inaccurate. As I noted in my instructions at the start of the trial, even using your smartphones, tablets, and computers - and the news and social media apps on those devices - may inadvertently expose you to certain notices, such as pop-ups or advertisements, that could influence your consideration of the matters you've heard about in this courtroom.

You are permitted to discuss the case with only your fellow jurors in the jury room during deliberations because they have seen and heard the same evidence and instructions on the law that you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of the courtroom. For this reason, I expect you to inform me as soon as you become aware of a juror's violation of these instructions. should you learn about or share any information about this case outside of this courtroom or the jury room, or learn that another juror has done so.

**Source and Authorities**: 3 Fed. Jury Prac. & Instr. § 103:03 (7th ed.); Judge Sweeney's Instruction No. 15.

13