IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-CV-00986-CNS-STV

DONQUENICK YVONNE JOPPY,

    Plaintiff,

v.

HCA-HEALTHONE, LLC d/b/a THE MEDICAL CENTER OF AURORA,

    Defendant.

_____

**PLAINTIFF'S MOTION FOR REASONABLE FEES
AND RELATED NON-TAXABLE EXPENSES**

_____

Plaintiff, Donquenick Yvonne Joppy, through undersigned counsel, Jennifer Robinson, Esq., hereby submits the following Plaintiff's Motion for Reasonable Fees and Related Non-Taxable Expenses as follows:

Pursuant to D.C.COLO.LCivR 7.1(a) and the Court's Practice Standards, undersigned counsel certifies that the parties have conferred regarding this Motion for Attorney's Fees and Costs but have not been able to reach agreement at this time.

## I.   Introduction and Overview of the Litigation

Under "the American Rule[, ...] [e]ach litigant pays his own attorney's fee, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 28, 140 S. Ct. 365, 370, 205 L. Ed. 2d 304 (2019) (internal quotation marks omitted). Here, 42 U.S.C. § 1988(b) authorizes the Court to allow Ms. Joppy as the party that prevailed—and did so to an excellent degree with a jury award of $20 million after contentious pre-trial proceedings against a defendant that turned most issues into battles— "a reasonable attorney's fee as part of the costs." Hence, Ms. Joppy files this motion under Fed. R. Civ. P. 54(d)(2) and Local Civil Rule 54.3.

Ms. Joppy, a highly-skilled intensive care nurse, filed this case in 2022 to remedy race discrimination and retaliation by HCA-Healthone d/b/a The Medical Center of Aurora ("TMCA"). Her complaint under 42 U.S.C. § 1981 alleged discrimination and retaliation after she complained about unequal treatment subsequent to the end-of-life care she provided to a 94-year-old patient. (Doc. 1 at 21-22.) Ms. Joppy originally asserted also that TMCA and certain employees maliciously prosecuted her. (Doc. 1 at 22.) After two amendments (Docs. 49, 96) and a ruling by the Court concerning the claim for malicious prosecution (Doc. 135), Ms. Joppy's final pleading maintained the two § 1981 claims and

1

described the malicious prosecution as a component of TMCA's discriminatory and retaliatory treatment. (Doc. 167 at 24, ¶ 199 & *id.* at 25, ¶ 205.) The Court eventually granted summary judgment against the claim for malicious prosecution and denied summary judgment against the § 1981 claims. (Doc. 308.)

After extensive discovery—including more than 15 depositions, multiple discovery disputes, and voluminous motion practice—the case was tried to a verdict on August 19, 2025. The jury found TMCA retaliated and discriminated against Ms. Joppy. (Doc. 380.) It awarded compensatory damages of $5 million and punitive damages of $15 million. (Doc. 380.) (Ms. Joppy did not seek back pay.) The Court entered a final judgment (Doc. 381), and awarded costs to Ms. Joppy under 28 U.S.C. § 1920 (Doc. 395).

The scope, duration, and intensity of this case far exceed that of a typical employment dispute. TMCA employed aggressive and resource-intensive tactics throughout, requiring Ms. Joppy's counsel to devote extraordinary time and skill to preparing and presenting the case. The verdict is among the largest civil-rights jury awards ever obtained in this District, and reflects both the seriousness of the violations proved and the effectiveness of Ms. Joppy's legal representation.

## II.    The Attorney's Fees

The Supreme Court has established a "'strong presumption'" that the lodestar—the product of reasonable hours times a reasonable hourly rate—represents "the reasonable fee" for prevailing parties, *Perdue v. Kenney A.*, 559 U.S. 542, 553-54, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010), which is to say a fee that "*roughly* approximates" the fee of a lawyer representing a client who paid by the hour. *Perdue*, 559 U.S. at 551, 130 S. Ct. at 1672. *See also Valdez v. Macdonald*, 66 F.4th 796, 836 (10th

Cir. 2023) ("[t]he most useful starting point for determining the amount of a reasonable fee is the … so-called lodestar amount" (internal quotation marks omitted)). A court's determinations of reasonable hours and reasonable rates are reviewable only for abuse of discretion. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

Quantification of the lodestar "'does not end the inquiry,' and 'other considerations,' including the 'results obtained' and the extent to which a party prevailed, may 'lead the district court to adjust the fee upward or downward.'" *Valdez*, 66 F.4th at 836 (quoting *Hensley*, 461 U.S. 424 at 434, 103 S. Ct. at 1940).[2] These "'other considerations'" may include what are known as the *Johnson* factors.[3] Hence, the final award is also a product of a district court's discretion. *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941; *Robinson v. City of Edmond*, 160 F.3d at 1275, 1280 (10th Cir. 1995), *cert. denied*, 517 U.S. 1201, 116 S. Ct. 1702, 134 L. Ed. 2d 801 (1996).

Accordingly, this motion discusses first the determination of the lodestar fee, and then whether the Court should exercise discretion to adjust it.

**A.     The Reasonable-Hours Component of the Lodestar**

"Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for

---

[2] After *Hensley*, the Supreme Court held that upward adjustments should occur only in "rare and exceptional circumstances," the necessity for which must be proven by the fee applicant with specific evidence, such that the resulting calculation is "objective and capable of being reviewed on appeal." *Perdue*, 559 U.S. at 553, 130 S. Ct. at 1673.

[3] But the Tenth Circuit noted in *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1103-04 (10th Cir. 2010), that, in *Perdue,* the Supreme Court "significantly marginalize[d] the twelve-factor *Johnson* analysis," such that "the lodestar determination is primary."

3

each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty.*, 157 F.3d 1243, 1250 (10th Cir. 1998). This requirement is reinforced by the Court's local rule, which requires "a detailed description of the services rendered [and] the amount of time spent" on the services. LOCAL CIVIL RULE 54.3(b)(2). Ms. Joppy's counsel have satisfied the requirement by providing the Court a consolidated, chronological record of all time entries by all timekeepers (lawyers and paralegals) (Exh. 2, with totals summarized in Exh. 3), the accuracy of which the responsible lawyers have affirmed in their declarations attached to this motion. (Exh. 1 (JCR Dec.) at ¶ 29; Exh. 4 (LRS Dec.) at ¶ 6; Exh. 5 (RML Dec.) at ¶ 5; Exh. 6 (BPS Dec.) at ¶ 18; Exh. 7 (REM Dec.) at ¶ 14.)

The Court then "considers 'whether the attorney's hours were 'necessary' under the circumstances,'" *Valdez*, 66 F.4th at 836 (citations omitted), and whether they were reasonable. *Case*, 157 F.3d at 1250 ("[b]illing judgment consists of winnowing the hours actually expended down to the hours reasonably expended"). Reasonableness can be evaluated in light of

> (1) whether the tasks being billed "would normally be billed to a paying client," (2) the number of hours spent on each task, (3) "the complexity of the case," (4) "the number of reasonable strategies pursued," (5) "the responses necessitated by the maneuvering of the other side," and (6) "potential duplication of services" by multiple lawyers.

*Robinson*, 160 F.3d at 1281 (citing *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983).

All of the attorneys who charged time in this case testified they reviewed their time entries and exercised billing judgment with respect to their time. (Exh. 1 (JCR Dec.) at

4

¶¶ 30-31; Exh. 4 (LRS Dec.) at ¶ 6; Exh. 5 (RML Dec.) at ¶ 5; Exh. 6 (BPS Dec.) at ¶ 19; Exh. 7 (REM Dec.) at ¶ 14.) Further, Jennifer Robinson (Ms. Joppy's lead counsel) also reviewed the consolidated entries and further exercised billing judgment. (Exh. 1 (JCR Dec.) at ¶ 31.) As *Jane L.* requires, all counsel in this case "ma[d]e a 'good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.'" *Jane L.*, 61 F.3d at 1510 (quoting *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40). They eliminated or reduced numerous entries to ensure the hours submitted represent only the time reasonably necessary to prosecute and try this complex civil-rights case. The reductions that are evident on the face of Exhibit 2, as totaled on the single-page summary chart (Exh. 3), come to 406.75 hours, or $247,190.00

The most prominent exercise of billing judgment relates to the elimination of time spent solely on the claim for malicious prosecution. Time spent on an unsuccessful claim should be excluded from the lodestar only when it is "distinctly different" from successful claims, *Hensley*, 461 U.S. at 434-35, 103 S. Ct. at 1940, not when "the unsuccessful claims were intertwined with the successful claims through a common core of facts or related legal theories." *Robinson*, 160 F.3d at 1283. There was significant overlap between Ms. Joppy's malicious prosecution and § 1981 claims.

All of the responsible lawyers—and especially Jennifer Robinson as Ms. Joppy's lead counsel—have testified that after adjustments made in the exercise of billing judgment, the hours for which compensation is sought in this motion—specifically, a total of 4,251.75 hours—were reasonable and necessary for representing Ms. Joppy. (Exh. 1 (JCR Dec.) at ¶¶ 30-31; Exh. 4 (LRS Dec.) at ¶ 6; Exh. 5 (RML Dec.) at ¶ 5; Exh. 6 (BPS Dec.) at ¶ 20; Exh. 7 (REM Dec.) at ¶ 14.)

5

More specifically, Ms. Robinson's adjusted hours (2,495.70) were reasonable given the complexity, duration, and intensity of this litigation. The case spanned nearly four years, involved extensive discovery disputes, 15 depositions, multiple motions, and a seven-day jury trial. As Judge Kane explained in *Casey v. Williams Production RMT Co.*, 599 F. Supp. 2d 1253, 1256 (D. Colo. 2009), "[t]he Court recognizes that a diligent attorney, even one with over 30 years of practice experience, should thoroughly investigate the opposition's papers and the relevant legal precedent and strive to produce competent and compelling work product; this investigation and drafting take time."

Due to the aggressive defense tactics, it became necessary to engage experienced co-counsel with deep knowledge of federal practice in this District. Lisa Sahli and Robert Liechty formally joined the team by entering their appearances in late 2023 and early 2024 to provide targeted, high-level support in the pretrial, discovery and dispositive-motion stages. Both agreed to participate at reduced hourly rates significantly below prevailing market levels for attorneys of their expertise and experience. (Exh. 1 (JCR Dec.) at ¶¶ 13-14 & 17.)

As the case proceeded to trial preparation, and because of the aggressive and high-stakes nature of the case, Ms. Robinson determined that additional trial specialists were needed to strengthen the presentation before the jury. In early 2025 Ms. Robinson retained Brian and Elizabeth ("BB") Sanford, nationally recognized employment-law trial lawyers with extensive jury experience and a distinctive trial-consulting and presentation approach honed through specialized trial-advocacy programs and years of experience. (Exh. 1 (JCR Dec.) at ¶ 19.) The Sanfords' contributions directly enhanced the overall

6

trial strategy, courtroom presentation, and persuasive impact of the evidence—elements critical to achieving the unanimous $20 million verdict. (Exh. 1 (JCR Dec.) at ¶ 22.)

Finally, because of the extensive documentation and precision required for a fee submission of this magnitude, Ms. Robinson engaged Robert McKnight, who has more than 30 years of federal-practice experience and regularly prepares large fee petitions in employment cases, as reflected in his testimony. (Exh. 7 (REM Dec.) at ¶ 11.)

The Court knows well that this was a hard-fought case, and that "part of an attorney's calculus of the amount of time reasonably necessary for a case is the vigor which the opponents bring to the dispute." *Robinson*, 160 F.3d at 1284. Because the defense pursued an extraordinarily aggressive litigation strategy, counsel necessarily devoted significant time to preparing the record and ensuring evidentiary accuracy. Moreover, the overall staffing and time allocations were efficient and proportionate to the complexity of the case. Lead trial counsel assumed the bulk of the work; senior attorneys Ms. Sahli and Mr. Liechty provided discrete high-level legal analysis and trial preparation; and co-trial counsel Brian and Elizabeth Sanford contributed limited but critical jury-selection and trial-strategy support.

All counsel carefully exercised billing judgment and no further reductions are warranted. The hours presented reflect only those reasonably expended in achieving Ms. Joppy's complete success at trial.

**B.    The Reasonable Hourly Rates**

Once the compensable time is determined, the Court's second step in the lodestar calculation is to determine a reasonable hourly rate "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541,

7

1547, 79 L. Ed. 2d 891 (1984). None of Ms. Joppy's out-of-town counsel seek anything but Denver rates.

> To determine what constitutes a reasonable [hourly] rate for each person who worked on the case, the district court considers the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community including experience in civil rights or analogous litigation.

*Valdez*, 66 F.4th at 836 (internal quotation marks and citation omitted). Such evidence typically consists of testimony from the fee applicants as well as testimony from their peers. *Blum*, 465 U.S. at 895 n.11, 104 S. Ct. at 1547 n.11.

All of the necessary evidence—the testimony of the applicants and supporting witnesses Darold Killmer, John Culver, J. Bennett Lebsack, and Stephanie Wood—is attached to this motion and cited in the chart below, along with the applicants' current rates. *Missouri v. Jenkins*, 491 U.S. 274, 283-84, 109 S. Ct. 2463, 2469, 105 L. Ed. 2d 229 (1989) (allowing use of current rates to compensate for delay in payment).

| Lawyer | Year Licensed | Requested Rate/Hour | Evidence |
|---|---|---|---|
| Jennifer C. Robinson | 1994 | $720.00 | Exh. 1 (JCR Dec.) at ¶ 4; Exh. 10 (Killmer Dec.) at ¶ 13; Exh. 11 (Culver Dec.) at ¶ 17; Exh. 12 (Lebsack Dec.) at ¶ 2. |
| Lisa R. Sahli | 1993 | $500.00 | Exh. 1 (JCR Dec.) at ¶ 26; Exh. 4 (LRS Dec.) at ¶ 5; Exh. 11 (Culver Dec.) at ¶ 17; Exh. 12 (Lebsack Dec.) at ¶ 2. |
| Robert M. Liechty | 1984 | $600.00 | Exh. 1 (JCR Dec.) at ¶ 26; Exh. 5 (RML Dec.) at ¶ 7); Exh. 11 (Culver Dec.) at ¶ 17; Exh. 12 (Lebsack Dec.) at ¶ 2. |

8

| Brian P. Sanford | 1986 | $1,000.00 | Exh. 1 (JCR Dec.) at ¶ 20; Exh. 6 (BPS Dec.) at ¶ 13-17; Exh. 12 (Lebsack Dec.) at ¶ 2; Exh. 13 (Wood Dec.) at ¶¶ 12 & 15. |
|---|---|---|---|
| Elizabeth "BB" Sanford | 2017 | $550.00 | Exh. 1 (JCR Dec.) at ¶ 26; Exh. 6 (BPS Dec.) at ¶ 13-17; Exh. 12 (Lebsack Dec.) at ¶ 2; Exh. 13 (Wood Dec.) at ¶¶ 12 & 15. |
| Robert E. McKnight, Jr. | 1993 | $500.00 | Exh. 1 (JCR Dec.) at ¶ 24; Exh. 7 (REM Dec.) at ¶ 15; Exh. 12 (Lebsack Dec.) at ¶ 2. |
| Paralegal 1 (Gwen Burton) | N/A | $220.00 | Exh. 1 (JCR Dec.) at ¶ 11; Exh. 12 (Lebsack Dec.) at ¶ 2. |
| Paralegal 2 (Leah Robinson) | N/A | $180.00 | Exh. 1 (JCR Dec.) at ¶ 11; Exh. 12 (Lebsack Dec.) at ¶ 2. |

With respect to each applicant, the evidence establishes the following:

**Ms. Robinson** has practiced law for more than 30 years and has litigated complex employment and civil-rights cases since founding her firm in 2000. She has successfully tried multiple employment cases to verdict in federal and state courts and has achieved one of the largest § 1981 jury verdicts in the District of Colorado's history. Her current rate of $720 per hour is reasonable and conservative when compared with rates charged by experienced plaintiff-side trial lawyers and remains below the rates billed by senior defense-firm partners in comparable litigation, which often exceed $850–$1,000 per hour.

**Ms. Sahli** brings more than thirty years of civil-rights and employment-law experience, including significant work in discovery, deposition analysis, and witness preparation. Her rate of $500 per hour is below the prevailing Denver-market rate for

9

senior attorneys of her experience and reflects her decision to participate at a reduced rate to support this litigation.

**Mr. Liechty** has more than forty years of federal litigation experience and is highly regarded for his analytical and appellate skills. His $600 hourly rate is below the prevailing Denver-market rate for senior attorneys of his experience and reflects his decision to participate at a reduced rate to support this litigation.

**Mr. Sanford** is a nationally recognized civil-rights trial lawyer and board-certified specialist in both Labor and Employment Law and Civil Trial Law by the Texas Board of Legal Specialization—credentials achieved by fewer than one percent of attorneys in Texas. He has tried dozens of employment and civil-rights cases to verdict nationwide. His $1,000 hourly rate reflects his exceptional trial experience and national market standing and has been approved by other federal courts. His limited but strategic involvement in jury selection, trial presentation, and case framing substantially advanced Plaintiff's success and justifies application of his full market rate.

**Ms. Sanford** is a seasoned employment-law attorney and trial strategist who assisted with jury selection, exhibit organization, witness examination, demonstrative development during trial and presentation flow at trial. Her $550 hourly rate is reasonable given her experience, trial preparation work, and the specialized nature of her contributions in a high-stakes federal jury trial.

**Mr. McKnight's** $500 hourly rate is consistent with market rates for senior attorneys performing specialized fee-litigation work. Courts have recognized that time spent preparing and defending a fee application is fully compensable under § 1988. *Case*,

157 F.3d at 1254 ("'[a]n award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application'").

**Ms. Robinson's paralegal support** was essential to manage the extensive documentary and evidentiary record in this case as well as specialized skill in developing trial power points and demonstrative illustrations. The rates of $220 per hour for senior paralegal and $180 per hour for junior paralegal support are within the market range for experienced litigation paralegals in Denver. Their participation reflects efficient use of staffing to control attorney time and costs.

C. <u>The Lodestar Fee, After Billing Judgment and Before Final Adjustment</u>

The presumptively correct lodestar fee, based on the reasonable hours documented in the time-entry exhibits, and on the hourly rates documented in the supporting declarations, is:

| Lawyer | Hours | Rate/Hour | Lodestar Fee |
|---|---|---|---|
| Jennifer C. Robinson | 2,495.70 | $720 | $1,795,904.00 |
| Lisa R. Sahli | 542.85 | $500 | $271,425.00 |
| Robert M. Liechty | 385.40 | $600 | $231,240.00 |
| Brian P. Sanford | 224.00 | $1,000 | $224,000.00 |
| Elizabeth "BB" Sanford | 155.00 | $550 | $85,250.00 |
| Robert E. McKnight, Jr. | 23.10 | $500 | $11,550.00 |
| Paralegal 1 – Gwen Burton | 151.50 | $220 | $33,330.00 |
| Paralegal 2 – Leah Robinson | 274.20 | $180 | $49,356.00 |
| **Lodestar Fee** | | | **$2,703,055.00** |

D. <u>The Correctness of the Lodestar</u>

11

This is a run-of-the-mill occasion where the "'strong presumption'" of the lodestar's reasonableness, *id.* at 553-54, 130 S. Ct. at 1673, holds true. In other words, there is no reason—not even the outcome of Ms. Joppy's malicious prosecution claim—to adjust the lodestar downward. It is never appropriate to reduce a fee in proportion to the number of claims on which a party was successful. *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940 (noting "rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon'".

What *Hensley* does require is a "qualitative comparison[] among substantive claims before adjusting the lodestar," so as to ensure a proper "'relationship between the amount of the fee awarded and the results obtained.'" *Jane L.*, 61 F.3d at 1511. Pursuant to such a conscientious comparison, *Hensley* makes clear that a fully compensable fee, with no downward adjustment, is usually appropriate in cases such as this: "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee…. [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940.

The result here is a $20 million verdict. It is hard to imagine that Ms. Joppy would have been awarded more even if she had prevailed on the claim for malicious prosecution. "*Hensley* made it abundantly clear that failure on some interrelated claims [such as Ms. Joppy's malicious prosecution claim] is not nearly as important a factor as the 'overall relief' obtained by the plaintiff." *Robinson*, 160 F.3d at 1284. Ms. Joppy's success on her § 1981 claims was such an excellent result that any reduction of the lodestar would be inappropriate.

The lodestar fee is also correct in light of the importance of this case. It vindicated Ms. Joppy's fundamental rights, as protected by § 1981, and exposed race discrimination and retaliation within one of the largest private hospital systems in the country. The jury's $20 million verdict sent a powerful message that retaliation and discrimination in the workplace will not be tolerated. "*Particularly in civil-rights cases such as this*, 'the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Joseph A. by Wolfe v. N.M. Dep't of Human Servs.*, 28 F.3d 1056, 1060 (10th Cir. 1994) (emphasis added; quoting *Hensley*, 461 U.S. 435, 103 S. Ct. at 1940). As the Supreme Court has recognized, "[u]nlike most private tort litigants, a civil-rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686, 2694, 91 L. Ed. 2d 466 (1986). The importance and scope of this case therefore justified the extensive hours required for its preparation and trial.

### 3. The Related Nontaxable Expenses, Including Fees for Experts

The Clerk of Court has already taxed costs under 28 U.S.C. § 1920. (Doc. 395.) By this motion, Ms. Joppy seeks (in addition to her attorney's fees) those nontaxable litigation expenses that "'may be awarded as attorney's fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable.'" *Valdez*, 66 F.4th at 837. Also awardable as attorney's fees are fees for experts. 42 U.S.C. § 1988(c). Ms. Robinson, Ms. Sahli, and Mr. Sanford have testified to both of the *Valdez* elements. (Exh. 1 (JCR Dec.) at ¶ 32; Exh. 4 (LRS Dec.) at ¶ 9; Exh. 6 (BPS Dec.) at ¶ 21.) Also, Ms.

13

Robinson's has testified to the factual justification for expert fees and costs related to Hollynd Hoskins. (Exh. 1 (JCR Dec.) at ¶ 33.) The costs are tabulated in Exhibit 8, and the total is $42,106.64. Documentation is provided in Exhibit 9. The Court should award the full amount.

### 4. Post-Judgment Interest on the Award of Fees and Costs

The Court should award post-judgment interest on the award of fees and costs from the date when they "were meaningfully ascertained and included in a final, appealable judgment." *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992).

### 5. Supplemental Motion

Ms. Joppy may file a supplement to this motion, or may file a subsequent motion, to itemize any fees and costs that accrue after this filing of this motion or were not otherwise included in it.

### III. Conclusion

Ms. Joppy's attorneys have fully complied with their obligations under the law, including FED. R. CIV. P. 54(d)(2) and LOCAL CIVIL RULE 54.3, in seeking fees and costs in this case. They maintained meticulous, detailed contemporaneous records of their time and expenses. They have exercised billing judgment and deleted from this request time that was unnecessary, duplicative or unreasonable for any reason. And they have sought for themselves (and for others in their firms) billing rates that are consistent with the standard of reasonableness documented in the numerous supporting declarations.

The Court should award fees, costs, and postjudgment interest as set forth below:

14

a. A fee of $2,703,055.00, detailed as follows:

| Lawyer | Hours | Rate/Hour | Lodestar Fee |
|---|---|---|---|
| Jennifer C. Robinson | 2,495.70 | $720 | $1,795,904.00 |
| Lisa R. Sahli | 542.85 | $500 | $271,425.00 |
| Robert M. Liechty | 385.40 | $600 | $231,240.00 |
| Brian P. Sanford | 224.00 | $1,000 | $224,000.00 |
| Elizabeth "BB" Sanford | 155.00 | $550 | $85,250.00 |
| Robert E. McKnight, Jr. | 23.10 | $500 | $11,550.00 |
| Paralegal 1 – Gwen Burton | 151.50 | $220 | $33,330.00 |
| Paralegal 2 – Leah Robinson | 274.20 | $180 | $49,356.00 |
| **Lodestar Fee** | | | $2,703,055.00 |

b. Costs in the total amount of $42,106.64.

c. Postjudgment interest on fees and costs totaling $2,745,161.64 from the date of rendition of the Court's order on this motion.

Respectfully submitted this 27th day of October 2025.

ROBINSON & ASSOCIATES LAW OFFICE

/s/Jennifer Robinson_____
Jennifer Robinson
7900 E. Union Ave., Suite 1100
Denver, CO. 80237
Phone:   (303) 872-3063
jrobinson@raemployment.com
ATTORNEY FOR PLAINTIFF

15

**Certificate of Service**

On October 27, 2025, I served the foregoing document with all exhibits on all counsel of record via the Court's electronic filing system.

*/s/ Jennifer Robinson, Esq.*

16